### HARDING'S CASE.

In an indictment for forcible entry, at common law, it is not necessary to allege a seizin of the *locus in quo.*

The *Stat. 5. Rich. 2. chap. 7.* is part of the common law of this State.

Forcible entry into a dwelling house is indictable at common law, though the force be alleged only in the formal words *vi et armis.*

THE defendant was indicted for that he, "with force and "arms, to wit, with an axe and auger, unlawfully, violently, "forcibly, injuriously and with a strong hand, did enter into "the dwelling-house of *Joseph Cate* in said *Portland,* and in his "actual and exclusive possession and occupation with his fami- "ly; and the said *Harding* did then and there unlawfully, vio- "lently, forcibly, injuriously and with a strong hand, bore into "said dwelling-house with said auger, and cut away a part of "said house, and stove in the doors and windows thereof with "said axe, said *Joseph's* wife and children being in said house, "thereby putting them in fear of their lives", &c.

A verdict of conviction being found against the defendant, he moved that judgment be arrested for the following reasons:—

1. That the allegations contained in said indictment do not amount to any criminal offence, either at common law, or by statute.

2. That the indictment contains no allegation that *Joseph Cate* was seized of the said dwelling-house, or of the land whereon the same stands, at the time of the alleged forcible entry: nor does it allege who was seized of the same; neither does it appear but that *Harding* was himself seized of the freehold.

3. That there is no allegation in said indictment of any seizin of the said dwelling-house or of the land whereon the same stands, neither is there any averment in said indictment that said *Cate* was either lawfully or peaceably in possession of said dwelling-house at the time of the alleged forcible entry into the same, nor does it appear from any allegation in said indictment, but that said *Cate* was in possession of said dwelling-house by force and by wrong, which force it was lawful for said *Harding* to repel with force.

*Hopkins*, in support of the motion.

Three causes of arrest are assigned. But the subject is to be considered as though the *first* cause assigned were in the shape of exceptions to the direction of the Court to the jury: and the following facts, in addition to the allegations in the indictment, are relied on as sufficient to have justified a direction of acquital. It was admitted or proved at the trial, that the land and part of the house where the act mentioned in the indictment was done, had been assigned to *Harding November* 19, 1819, as his purparty, under regular proceedings in a petition for partition, to which proceedings *Cate* was a party, and was present at the assignment; after which, and a week before the act complained of was done, upon *Cate's* refusal to pay rent, the defendant had ordered him to quit the premises. And there was no proof of bodily violence done by the defendant to any person. It is contended that the jury should have been directed to acquit the defendant, because these facts, and those stated in the indictment, do not constitute any offence at common law, or by any statute.

At common law, if the right of entry be not lost, a man may enter into his own land, even *manu forti ;*—and such entry is not an offence. If, indeed, it be accompanied with a riot, assault and battery, or any other breach of the peace, such riot or assault, &c. is, without doubt, punishable. But it is not an offence *per se.* No mischief can result from such a principle; and if any specific offence accompany the entry, the punishment for that offence is sufficient security for the rights of the community. The doctrine contended for will support the rights of the injured person against a wilful and deliberate wrongdoer. The contrary doctrine offers protection to the deliberate perpetrator of known wrong.

Such was the common law in *England ;*—and so it remained until *Stat.* 5. *Rich.* 2. when the common law, *in that country,* was found to create much inconvenience by arming the tenants of the lords against each other, and giving a dangerous authority to powerful men. A statute was then enacted which restrains all entries into lands *manu forti ;* since which, it is admitted that, in *England,* such entry could not be made. We are not, however, to conclude that this statute ever had force here. This is

contended because, so far as we can learn, this is the first instance of any such prosecution in this country, and because the reason which led to the enactment of this statute never existed here;—we had no vassalage—no barons to acquire dangerous power;—the reasons of the statute never crossed the ocean;—and we are therefore justified in treating it as the law of a foreign country, which a different state of things has excluded from our criminal code. 3. *Bac. Abr.* 555. 556. *tit. Forcible Entry A.*

The *second* reason is properly in arrest. No seizin is alleged,—neither in *Cate,* nor in any other person. It is contended that such averment is necessary, in order that the defendant may know, specifically, what he has to defend, and how to prepare for trial. *People v. Shaw,* 1 *Caines* 125.

The *third* reason is also in arrest. If the facts in this indictment be all true, and they must be so taken being found by the jury, what, it may be asked, is the consequence? We cannot conclude, from any thing in the indictment, that he has committed any offence. It may all be true, and yet, *under certain circumstances, Harding* may be entirely innocent and fully justified. The indictment does in no wise negative these circumstances; and therefore no legal conclusions of guilt can be made against him. It may be likened to an indictment for an assault and battery, containing no averment that the act was *contra pacem.* In this case, as it might be an offence, or it might not, and the indictment cannot settle the question, no sentence could be passed. Or, suppose one indicted and convicted of stealing and carrying away a chattel, which is not alleged to be the property of a third person. Here could be no sentence; for the law is well settled that the chattel in such case, shall be presumed to be the property of the person charged. So in the case at bar, it being uncertain, from any thing in the indictment, whether the defendant is guilty of a crime or not, and the legal presumption being in favour of innocence, no sentence ought to pass upon him.

 *Todd, for the State.*

Every entry made *manu forti,* with a dangerous weapon, putting peaceable citizens in jeopardy or fear, is a breach of the

peace; and subjects the party thus entering to an indictment. The defendant's having a right of entry cannot justify the degree of force exerted on this occasion: and when it is apparent that the force was effected with a dangerous weapon, and accompanied with acts which could not fail to excite terror, the public have an interest to suppress such unlawful violence. *Rex v. Storr*, 3 *Burr.* 1698. and *Rex v. Bathurst, there cited.*

If *Harding* had the right he pretends to have had, he should have made such use of it as the law would justify; and having offended in this particular, he is liable *criminaliter* to its animadversions. The peaceable domicil of the citizen is not to be assailed in this hostile manner with impunity. The evidence adduced at the trial having fully supported all the material allegations in the indictment, the verdict is well found; and affords a sufficient foundation for a judgment.

PREBLE J. At another day in the term, delivered the judgment of the Court, as follows.

We are requested by the defendant's counsel to consider the first cause, assigned in his motion in arrest of judgment, as a motion for a new trial. In the form, in which the subject is brought before us, we can take notice of no facts, but those alleged in the indictment. The cause assigned also is properly in arrest of judgment. The indictment is at common law. If the facts charged, therefore, do not constitute an indictable offence at common law, no sentence can be pronounced upon the defendant.

The earlier authorities do sanction the doctrine, that at common law, if a man had a right of entry in him, he was permitted to enter with force and arms, where such force was necessary to regain his possession. [*Hawk. P. C. Chap.* 64. and the authorities there cited.] To remedy the evils arising from this supposed defect in the common law, it was provided by *Stat. 5. Rich. 2. Chap.* 7. that "none should make any entry into any "lands or tenements, but in cases where entry is given by "the law; and in such cases, not with strong hand nor with "multitude of people but only in a peaceable and easy man-"ner." The authorities are numerous to show that for a trespass,—a mere civil injury, unaccompanied with actual force or

violence, though alleged to have been committed with force and arms, an indictment will not lie. But in *Rex v. Bathurst, Sayers' Rep.* 226. the Court held that *forcible entry into a man's dwelling-house* was an indictable offence *at common law*, though the force was alleged only in the formal words *vi et armis.* In *Rex v. Bake*, 3 *Burr.* 1731. it was held that for a forcible entry an indictment will lie *at common law;* but actual force must appear on the face of the indictment, and is not to be implied from the allegation, that the act was done *vi et armis.* In the *King v. Wilson*, 8 *D.* & *E.* 357. an *indictment at common law* charging the defendant with having unlawfully and with a strong hand entered the prosecutor's mill, and expelled him from the possession, was held good. In this latter case *Lord Kenyon* remarks " God forbid these facts, if proved, should not be an indictable " offence ;—the peace of the whole country would be endanger- " ed, if it were not so." The case at bar is a much stronger one, than either of those cited. The peace of the State would indeed be jeopardized, if any lawless individual, destitute of property, might, without being liable to be indicted and punished, *unlawfully, violently, and with a strong hand*, armed *with an axe and auger, forcibly enter a man's dwelling-house*, then *in his actual, exclusive possession and occupancy with his wife and children—stave in the doors and windows, cutting and destroying, and putting the women and children in fear of their lives.*

The second objection that no seizin is alleged does not apply to indictments for forcible entries at common law. Under the statute of *New-York* against forcible entry, the party aggrieved has restitution and damages; and hence it is necessary that the indictment should state the interest of the prosecutor. The *People v. Shaw* cited by the defendant's counsel, and the *People v. King*, 2 *Caines* 98. are cases upon the statute of that State. In *Rex. v. Bake, Mr. Justice Wilmot* remarks ; " No doubt an " indictment will lie at common law for a forcible entry though " they are generally brought on the acts of parliament. On " the acts of parliament it is necessary to state the nature of the " estate, because there must be restitution, but they may be " brought at common law." In *The King v. Wilson, Lord Kenyon* says, " No doubt the offence of forcible entry is indictable " at common law, though the statutes give other remedies

"to the party grieved, restitution and damages; and there-
"fore in an indictment on the statutes, it is necessary to state
"the interest of the prosecutor." Our statute contains no such
provision, and gives no remedy by indictment. It simply pro-
vides a process to obtain restitution, leaving the parties, the one
to his action for damages, the other to his liability to be indict-
ed and punished at common law.

With respect to the third objection: it is alleged in the in-
dictment that the house was *Cate's dwelling-house in his actual
and exclusive possession and occupation with his family,* and that
the defendant *unlawfully entered,* &c. On the whole we think
the indictment contains sufficient matter to warrant a judgment
upon the verdict which has been found against the defendant;
and the motion in arrest is accordingly overruled.