## Asa Clapp vs. Theodore Paine.

Where the indenture between the parties by which the tenancy is created, has fixed a definite period for its termination, the lessee is not entitled to notice to quit, to impose upon him the legal obligation to give up the estate to his landlord.

By the law directing proceedings in forcible entry and detainer, as it formerly stood, they could not be based upon a mere refusal to deliver possession of land, when demanded; but the st. of 1824, c. 268, in relation to this process has extended its provisions to an unlawful refusal of the tenant to quit, after he shall have had thirty days notice, requiring him to do so.

To bring the case within this provision of the statute, the tenant must wrongfully hold over for the space of thirty days after his estate is determined; and the notice there provided for is to be given after the tenancy has terminated.

Where the tenancy is limited to a definite period, the landlord may enter immediately upon its termination; and if his entry is forcibly resisted, he may at once avail himself of the remedy provided by this statute, without having given any notice whatever.

Under this statute the cause of complaint must exist before the aid of the law is invoked; and therefore the process cannot be maintained by proof of a forcible detainer after the making of the complaint and warrant, and before the service thereof, upon the same day.

Exceptions from the Middle District Court, Redington J. presiding.

This was a process under st. 1824, c. 268, "directing the proceedings against forcible entry and detainer."

The bill of exceptions did not come into the hands of the Reporter, and the omission was not discovered until it was too late to obtain a copy. From the papers referred to, which only were received, it appears, that the complainant leased to *Paine*, by an instrument under seal, the public house, buildings and grounds at *Owls Head* in *Thomaston*, to hold the same for the term of eight months ending on the last day of *April*, 1838, at a rent of $100, half to be paid in four months and the residue at the end of the term; *Paine* therein agreeing to " quit and deliver up the premises at the end of the term, to the lessor or his attorney, peaceably and quietly, in as good order," &c.   More than thirty days before the expiration of the lease, *March* 20, 1838, the complainant in writing, informed *Paine*, that he had leased the house to another person, who was to enter into possession on *May* 1, 1838, and requesting *Paine* to

deliver up the possession at the end of his term. *Paine* remained in possession, and on *May* 22, 1838, a constable of *Thomaston* went to the house with the lease, and with a warrant issued the same day by a justice of the peace and of the quorum, on the complaint which is the foundation of this process, and informed *Paine,* then standing in the door of the house, that he was authorized to take possession for the owner, and requesting that possession should be given. *Paine* refused to give up the possession, and threatened personal violence, if any attempt was made to obtain it. The constable then served the warrant. The ruling of the District Judge does not appear in the papers received; but they were opposed to the maintenance of the process, as the complainant filed exceptions.

*H. C. Lowell,* for the complainant.

At common law, when the right of entry had not been lost, the lawful owner might enter into his own lands and tenements without the aid of a legal process; and the lessor, upon the determination of the lessee's term, might in the same way, re-enter upon him and regain the rightful possession to himself, even with a strong hand, and the lessee could not lawfully resist him. *Hawk. P. C.* c. 64; 1 *Russell on Cr.* 246, *and notes; Harding's Case,* 1 *Greenl.* 22; *Sampson* v. *Henry,* 13 *Pick.* 36; *Moshier* v. *Reding,* 3 *Fairf.* 483; 4 *Kent's Com. (2d Ed.)* 112.

But as the exercise of this private remedy, while it operated the most speedy justice, was sometimes found to be attended with violations of the public peace, a remedy was early provided in *England,* and the substance has been incorporated into the statutes of *Massachusetts* and *Maine,* with some modifications from time to time, until at length we have the *st.* 1824, *c.* 268, upon which this process is founded. The design of this statute was to restore to the owner the possession of his buildings, withheld from him wrongfully, and is therefore a remedial statute, and is to be construed liberally, and consistently with the purposes of justice between the parties. 5 *Burr.* 2694; 1 *Kent,* 464. The statute provides for two classes of cases. The first section provides for that class of cases only, where the possession has been withheld by force, either express or implied; and by the fourth section this remedy is extended to cases where the tenant after his estate has been determined,

having had thirty days notice for that purpose in writing, has un-lawfully refused to quit, though that refusal may not have been at-tended with force, threats or intimidation.

When the defendant is in under a written lease, as in this case, wherein it is distinctly stipulated that the term shall end at a time certain, he is not entitled either in law or equity, to a notice to quit, for in that case both parties are equally well apprized of their rights and duties; and the lessor may enter on the lessee, when the term expires, without further notice, but if he chooses to adopt this statute remedy, he must give the thirty days notice to quit.

This notice may be given before as well as after the specified term has expired. The statute probably contemplates more par-ticularly the case of tenants at will, or parol leases, and the only object of the notice is to inform the tenant, that it is the will of the lessor to determine the tenancy, and that he is allowed thirty days, within which to obtain another situation and remove his effects, for at that time he will require the possession to be restored to him-self. Even in such case the notice is necessarily given during the tenancy and before its termination; for it is but the declaration of the lessee's will to determine the estate in thirty days, and for all prac-tical purposes, the term still continues, and all the rights of the ten-ant to occupy remain unchanged till the last day of the thirty days; and if on that day he chooses to deliver up the possession, he has but enjoyed his full term, and can in no just sense be said to have held over after his estate is determined; but if he remain a mo-ment longer, then in the language of the statute, he is unlawfully refusing to quit, and having had the thirty days notice, he becomes at once, subject to the process provided by the act. The lessor's will may terminate at one time, and the term end at another time. The notice required by the statute, even under parol leases, must necessarily be given, while there is yet a subsisting tenancy, before the lessor has a right to immediate possession, before the lease is determined, and while the right of possession is clearly with the tenant. This is sustained by the authorities generally. 4 *Kent's Com.* 112. *Coffin* v. *Lunt,* 2 *Pick.* 70, *note.* Nor do the cases in 13 *Maine R.* 209; 16 *Mass. R.* 1; 17 *Mass. R.* 282; and 1 *Pick.* 43, when carefully examined, conflict with this view. Le-

Clapp v. Paine.

gal notice may be given then, even under a parol lease, before the party had a right to the possession ; and if so, it would seem that under a written lease, where the term is to end at a time specified, there can be no objection to a notice thirty days before the arrival of that time, that the tenant would then be required to yield up the possession to the rightful owner. This could operate no injustice or hardship, as it would be but in accordance with the terms of their contract, entered into understandingly, with all the formality of a sealed instrument.

If the notice cannot be given during the pendency of the lease, when can it be legally given ? If the tenant holds over by consent express or implied, but for a day, after the determination of his lease, it is held to be a new contract for another term of the same duration. 4 *Kent,* 112. The statute provides, in case of carrying the proceedings to the Common Pleas, that the tenant shall recognize with sureties to pay the rent from that time. The lease may be with sureties, and may secure the rent for the term. The sureties are discharged from all further liability at the expiration of the term. 1 *Pick.* 335; 2 *Greenl.* 42. If the owner must wait until the end of the term before he can give notice, he may wholly lose the rent for the thirty days. If it cannot be given before the end of the term, the law allows the tenant to be a wrongdoer for thirty days, and encourages a party to disregard and violate his own deed. 1 *Kent,* 465; 2 *Bl. Rep.* 1075; 6 *Wheat. Selw. N. P.* 604; 5 *Burr.* 2694.

It was also contended that the process might well be maintained under the first section of the statute. 1 *Russell on Cr.* 247. Here the forcible detainer proved, the date of the process, and the service of it, were all on the same day. A writ may be considered as purchased, or a prosecution commenced, at any moment of the day of its date, which will most accord with the purposes of justice, and the remedy to be enforced. *Badger* v. *Phinney,* 15 *Mass. R.* 341 ; *Seaver* v. *Lincoln,* 21 *Pick.* 267.

*Stevens,* for the respondent, admitted that the lease expired *May* 1, 1838, and said, the only question in the case was, whether this process would lie without a written notice, given after the expiration of the lease and thirty days before the complaint to the justice ?

This notice in *March* is no better than if given on the day of the execution of the lease, and an acknowledgment of notice might in such case be printed in the form and signed with it. The principle contended for by the counsel for the complainant would repeal the statute. It would enable the lessor to make use of this process on the day after the lease expired. The notice to quit the premises must be given when the occupant has no legal right to remain, and thirty days are given him in which to remove, before the process will lie. *Davis* v. *Thompson*, 13 *Maine R.* 209; *Coml'th.* v. *Dudley*, 10 *Mass. R.* 403; *Gage* v. *Smith*, 14 *Maine R.* 466. It is said that the process may be maintained because *Paine* resisted an entrance on the day the service was made. There are two objections to this. First, nothing taking place after the making of the complaint and issuing of the warrant can give a ground for supporting these proceedings: and second, because no legal notice had been given, and the officer had no legal right to take forcible possession, without a precept authorizing it.

The opinion of the Court was drawn up by

WESTON C. J. — The indenture between the parties, by which the tenancy was created, having fixed a definite period for its termination, the defendant was not entitled to notice to quit, to impose upon him the legal obligation to give up the estate to the plaintiff, his landlord. *Ellis* v. *Paige & al.* 1 *Pick.* 43; *Messenger* v. *Armstrong*, 1 *T. R.* 54; *Bright* v. *Darby*, *ib.* 162. The notice given by the plaintiff, prior to the termination of the lease, might properly have the effect to remove any implication, that if the defendant held over, he did so by the acquiescence of the plaintiff. By the law directing proceedings in forcible entry and detainer, as it formerly stood, they could not be based upon a mere refusal to deliver possession of land, when demanded. There must have been some apparent violence in word or deed, or some circumstances tending to excite terror in the owner, and to prevent him from maintaining his right. *Commonwealth* v. *Dudley*, 10 *Mass. R.* 403.

The statute of 1824, *c.* 268, in relation to this process, has extended its provisions to an unlawful refusal of the tenant to quit, after he shall have had thirty days notice, requiring him to do so.

We are of opinion, that to produce this effect he must have wrongfully held over for that space of time, after his estate had determined. Such an unreasonable refusal is made equivalent to a forcible detainer. It appears to us, that the notice there provided for is to be given, after the estate had terminated; and that the liability of the tenant to this process, upon his mere refusal to quit, is qualified by this condition.

It gives no new rights to the tenant, but it extends the remedy of the landlord upon this process farther, than could have been made available under the former law. That such should be the construction, is strongly intimated in *Davis & al.* v. *Thompson,* 13 *Maine R.* 209. This is no restriction of the rights of the landlord. Where the tenancy is limited to a definite period, he may enter at once upon its termination; and *if his entry is forcibly resisted,* he may at once avail himself of the remedy provided by this statute, without having given any notice whatever. But upon a mere refusal, unaccompanied with force, the remedy is not afforded, until he shall first have given thirty days written notice.

The facts detailed in the testimony referred to, do amount to a forcible detainer; but they are subsequent both to the complaint, and to the time of issuing the warrant. We are of opinion, that the cause of complaint must exist, before it is actually made, and the aid of the law, in this summary mode, invoked. It would lead to an abuse of the process, to permit a complaint to be made and a warrant to issue, upon a mere apprehension that force might be used, leaving it to the discretion of the constable, whether a proper case existed, to justify a resort to the jurisdiction of the magistrates.

By the second section of the statute, a complaint must be formally made in writing, to a justice of the peace and of the quorum, of an unlawful and forcible detainer, before such justice is authorized to issue his warrant. The complaint, thus formally to be preferred, must necessarily be based, upon a prior unwarrantable exercise of force. We do not find in the testimony evidence, which would justify the jury in finding an actual forcible detainer, prior to the complaint; and the instructions, requested of the presiding Judge, that the testimony would warrant such a finding, were properly withheld. *Exceptions overruled.*