SABIA DIMATTEA PROFENNO

*vs.*

THE COMMUNITY OIL COMPANY, INC.

Cumberland.   Opinion, August 31, 1954.

*Barnett I. Shur,*
*Herbert M. Sawyer,* for plaintiff.

*Edward Devine,*
*Bernard Devine,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ.

TIRRELL, J. This is an action of Forcible Entry and Detainer brought by Sabia DiMattea Profenno against the Community Oil Company, Inc.

A written thirty-day Notice to Quit in the usual form was served upon the defendant, requiring the defendant to quit and deliver up the possession of said premises. The defendant failed and refused to quit and deliver up possession of said premises and, accordingly, an action of forcible entry and detainer was brought against the defendant, returnable to the Portland Municipal Court on July 21, 1953. Both the Notice to Quit and the action of Forcible Entry and Detainer were instituted and brought by Sabia DiMattea Profenno who, under the terms of the allowed will of her late husband, was the owner of a life estate in said premises. After a hearing was held in the Portland Municipal Court judgment was entered for the plaintiff. The defendant appealed and the case was fully heard by the presiding justice, without jury, at the December 1953 Term of the Cumberland County Superior Court. After a full and complete hearing and trial the presiding justice found for the plaintiff, assessed damages at $1.00, and ordered a writ of possession to issue. The defendant now brings this case before this court purportedly on exceptions to certain rulings of the presiding justice.

On January 20, 1938 Sabia DiMattea Profenno was the owner of a life estate in said property located at 164-178 Brighton Avenue, 235-247 Dartmouth Street, and 581-593 St. John Street in Portland, Maine, under the terms of the allowed will of her late husband, Camillo Profenno. By the provisions of this will the life estate would be terminated not only upon the death of Sabia DiMattea Profenno, but also upon the event of her remarriage, and in either of such events, the property would go to all of their children. The existence of this life estate in Sabia DiMattea Profenno has been admitted by the defendant and is not in issue here.

On January 20, 1938 the said Sabia DiMattea Profenno executed a lease of the above described premises for a period of ten years with the Community Oil Company, Inc., as Lessee. Due to the fact that the interest of Sabia DiMattea Profenno was that of a life tenant, the following provision was included in the lease:

> "Inasmuch as the Lessor hereunder has only a life estate in said premises and upon her death or remarriage the life estate shall terminate and go to her children, the undersigned children  of said Lessor join in this indenture for the purpose of confirming the estate herein granted, and to the extent that they may lawfully do so, for the purpose of joining in the covenants of the Lessor."

Said lease established a rental of One Hundred ($100.) Dollars a month, payable on the first day of each month for the preceding month, and contained a clause granting the Lessee the option of renewal for a term of five years and a further provision that at the termination of said five year extension (if such extension is made), the Lessee would *"be entitled to a new lease of the demised premises upon as favorable terms as the same may be leased or offered for lease to any other person."* (Emphasis supplied.)

On December 17, 1947, with the original ten-year lease period about to expire, the said parties executed an extension of said lease for a term of five years to take effect on January 20, 1948, which date was the expiration date of the lease then in effect and referred to above. While this extension was also between the life tenant, Sabia DiMattea Profenno, as Lessor and the Community Oil Company, Inc., as Lessee, it also contained the following language, similar in meaning and import to the language of the original ten-year lease:

> "Inasmuch as said Sabia DiMattea Profenno has only a life interest in said premises the undersigned children of said Lessor join in this Inden-

ture for the purpose of confirming the estate here-in granted, and to the extent that they may lawfully do so, for the purpose of joining in the covenants of the Lessor therein and herein stated and agreed to be performed."

This extension also contained exactly the same provision found in the original lease to the effect that the Lessee *"shall be entitled to a new lease of the demised premises upon as favorable terms as the same may be leased or offered for lease to any other person."* (Emphasis supplied.)

By registered letter dated November 25, 1952, the Lessor's attorney notified the Lessee that upon the expiration of the lease on January 20, 1953, no new lease would be offered to the said Community Oil Company, Inc., or to any other person as the Lessors did not intend to lease said premises to anyone, and requested that the Lessee should, therefore, quit and deliver up possession of the said premises upon the expiration of the then existing lease.

By letter under date of January 28, 1953 the attorney for the Lessor, plaintiff here, notified the Lessee that the Lessor would be willing to lease the said premises to the Community Oil Company, Inc., or to any other person, 'for a term of one year only, at the monthly rental of One Hundred Fifty ($150.) Dollars; that these were the most favorable terms that would be offered to anyone and that, in accordance with the provisions of the lease and extension thereof, the Community Oil Company, Inc., was being given the first opportunity to enter into such a lease.

The defendant corporation would not sign the offered lease, and thereupon the plaintiff caused the Notice to Quit to be served upon the defendant. When the defendant failed to vacate the premises in accordance with said notice, the present action of Forcible Entry and Detainer was brought against the defendant to secure possession of the premises.

The defendant is here upon two exceptions taken to certain rulings of the presiding justice. Both rulings referred to that clause in the said lease and extension thereof which provided that the Lessee would "be entitled to a new lease of the demised premises upon as favorable terms as the same may be leased or offered for lease to any other person." Counsel for the defendant contended that said clause was ambiguous and that parol evidence should be admitted to clarify the language contained therein. Upon the ruling by the presiding justice that the language contained in said clause was clear and explicit and not ambiguous and that, therefore, parol evidence relating to it was inadmissible, counsel for defendant excepted.

It will be noted, however, that the contentions of the defendant do not relate to the said rulings of the presiding justice relative to the question of ambiguity, but to the actual finding of the justice. The defendant complains that said finding is contrary to the law and the evidence in that:

(1) The defendant is not a tenant at will.

(2) The defendant is entitled to a new lease.

(3) The Notice to Quit was not signed by the life tenant or any of the remaindermen, notice having been signed by Barnett I. Shur, attorney, in behalf of the life tenant only and not in behalf of the life tenant and the remaindermen.

A bill of exceptions was filed wherein the only two exceptions as to rulings of law by the presiding justice were recited. *These exceptions are noted* in the record and relate to the following rulings by the presiding justice, namely

(1) That the language contained in the clause

"shall be entitled to a new lease of the demised premises upon as favorable terms as

> the same may be leased or offered for lease
> to any other person"

is *not ambiguous*.

(2)   That since the language is not ambiguous, *parol
evidence is inadmissible.*

With the above rulings of the presiding justice, first, that
the language contained in the questioned clause of the lease
is not ambiguous, and second, that since the language is not
ambiguous parol evidence is inadmissible, we are in perfect
accord. *McCully* v. *Bessey,* 142 Me. 209, at 213; *Smith* v.
*Blake,* 88 Me. 241; *Parkman* v. *Freeman,* 121 Me. 341; *Foster* v. *Foss,* 77 Me. 279; *Whitmore* v. *Brown,* 100 Me. 410,
413; *Woolen Co.* v. *Gas Co.,* 101 Me. 198, 213.

These were the only exceptions recited by the defendant
in its bill of exceptions. However, the defendant does not
come before this court contending these said rulings were
erroneous as a matter of law, but, rather, submits that the
presiding justice's finding is contrary to the law and the
evidence in certain respects. It then ascribes the following
as reasons for such contention:

(1)   That the defendant is not a tenant at will.

(2)   That the defendant is entitled to a new lease.

(3)   The Notice to Quit should also have been signed by
or in behalf of the remaindermen.

It is thus certainly evident that the defendant based its
case on a bill of exceptions, purportedly excepting to two
certain rulings as to the ambiguity of certain language contained in a lease and extension thereof. Certain questions
as to whether or not the defendant was or was not a tenant
at will, whether or not the defendant is entitled to a new
lease, and whether or not proper notice was given, will not
be considered herein, as they have no possible bearing upon
the question of whether or not the language hereinbefore

mentioned was or was not ambiguous. Decisions in this and other jurisdictions on the subject matter and form of exceptions are legion. All indicate in clear language that the purpose of a bill of exceptions is to bring to the court's attention allegedly erroneous rulings of law by a presiding justice:

"Exceptions lie to rulings upon questions of law only and not to findings upon questions of fact. And a bill of exceptions, to be available, must show clearly and distinctly that the ruling excepted to was upon a point of law, and not upon a question in which law and fact are so blended as to render it impossible to tell on which the adverse ruling was based." *Laroche* v. *Despeaux,* 90 Me. 178.

*Hurley* v. *Farnsworth,* 115 Me. 321; *Bowman* v. *Geyer,* 127 Me. 351.

The defendant has not in its bill of exceptions shown "clearly and distinctly that the ruling excepted to was upon a point of law." Since the reasons for the defendant's contention that the *finding* is against the law and evidence have no bearing whatever upon the rulings excepted to, we are left with the premise that the defendant merely excepts to the *finding* of the presiding justice.

The court treated this matter in unequivocal language in the case of *Helen H. Bronson, Appellant from Decree of Judge of Probate,* 136 Me. 401:

"The presentation of a mere general exception to a judgment rendered by a justice at nisi prius is not sufficient under the statute. An exception to a judgment rendered in the Supreme Court of Probate is within the rule."

The defendant has actually excepted generally to the *finding* of the presiding justice rather than to his rulings of law during the course of the hearing. Had a jury considered the case, the defendant might properly have desired

to file a motion for a new trial. This was, of course, impossible since the cause was heard by a justice in the absence of a jury. While the defendant purports to use the vehicle of a Bill of Exceptions to reach this court, the bill of exceptions itself is faulty in that it imparts the flavor of a motion for a new trial. The bill relates not to the rulings of law excepted to but to three matters entirely separate and distinct from the two rulings of law excepted to.

A Bill of Exceptions must stand or fall on the sufficiency of information presented in it. The defendant's exceptions are overruled.

The entry must be

*Exceptions overruled.*

*Judgment for plaintiff.*