**NORTH SCHOOL
CONGREGATE HOUSING**

v.

**Ruth MERRITHEW.**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1989.
Decided May 18, 1989.

Neil Shankman (orally), Legal Center of Maine, Lewiston, for plaintiff.

James E. Tierney, Atty. Gen., Peter J. Brann, Asst. Atty. Gen., Augusta, amicus curiae.

Thomas H. Kelley, Peter Darvin (orally), Pine Tree Legal Assistance, Inc., Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

When a landlord uses Maine's Forcible Entry and Detainer (FED) statute to evict a tenant, is the tenant entitled to a jury trial under the Maine Constitution? The answer to that question requires a review of some 200 years of history. We conclude that, until the 1960's, jury trials were always available in suits of this general nature and that the Maine Constitution requires them to be available now.

The material facts of the case are simple. The landlord served a notice to quit upon the tenant alleging that she had violated her lease by disruptive behavior. It then brought this FED action in District Court where juries are unavailable. The District Court denied the tenant's motion to remove the case to Superior Court for a jury trial.[1] After a hearing, the District Court (Portland, *Donovan, J.*) found that the tenant had engaged in activities amounting to "material non-compliance" with her lease. Judgment was entered for the landlord. On the tenant's appeal under M.R.Civ.P. 76D, the Superior Court (Cumberland County, *Alexander, J.*) ruled that the tenant has a state constitutional right to a jury trial and that the matter should therefore have been transferred to the Superior Court for jury trial at the outset. This interlocutory ruling was reported to the

---

1. Under the FED statute, 14 M.R.S.A. §§ 6001–6016 (1980 & Supp.1988), the District Court has jurisdiction of all cases of forcible entry and detainer. *Id.* at § 6003. M.R.Civ.P. 80D(i) prohibits removal of forcible entry and detainer actions, except as provided by statute. The statute, 14 M.R.S.A. § 6006, provides for removal to the Superior Court for jury trial only when the defendant claims title in herself or in another person under whom she claims the premises. Otherwise, an FED action reaches Superior Court only pursuant to 14 M.R.S.A. § 6008 on appeal from a judgment in the District Court "as in other civil actions"—*i.e.,* only on questions of law, M.R.Civ.P. 76D.

Law Court under M.R.Civ.P. 72(c).[2] We hold that a tenant has a constitutional right to a jury trial, but only after the District Court enters judgment. Therefore, we affirm the Superior Court ruling that the defendant is entitled to a jury trial, but vacate its ruling that the District Court erred in denying the defendant's request for removal prior to trial in the District Court.

### Article I, Section 20

The Maine Constitution provides now, as it did when adopted in 1820:

> In all civil suits, and in all controversies concerning property, the parties shall have the right to a trial by jury, except in cases where it has heretofore been otherwise practiced....

art. I, § 20. A landlord's FED suit to evict a tenant is either a civil suit or a controversy concerning property.[3] Accordingly, the Maine Constitution provides a right to a jury trial unless the exception—"where it has heretofore been otherwise practiced"—applies.

We have recently modified how we analyze the constitutional right to a jury trial to track more closely the language of article I, section 20. Specifically, our practice now is to find that there is such a right unless it is affirmatively shown that a jury trial was unavailable in such a case in 1820. *See In re Shane T.*, 544 A.2d 1295, 1297 (Me.1988); *City of Portland v. DePaolo*, 531 A.2d 669, 670 (Me.1987).[4] If the identi-

cal cause of action existed in 1820, the answer of course is easy. The analysis, however, is not limited to such obvious cases. We also consider "suits of the same general nature" in 1820 to determine whether it was "otherwise practiced" at that time. *See In re Shane T.*, 544 A.2d at 1297. *See also Ela v. Pelletier*, 495 A.2d 1225, 1228 (Me.1985).

We turn then to the variety of early remedies available to a landlord seeking to evict a tenant when Maine adopted its constitution.

The common law action of ejectment existed in Massachusetts during this period, although it was used in Massachusetts less frequently than in other parts of the country. *See* L. Friedman, *A History of American Law* 208 (1973). Ejectment was used more often by tenants than landlords, but does not appear to have been limited to tenants. *See, e.g., May v. Calder*, 2 Mass. 55 (1806); P. Hall, *The Massachusetts Law of Landlord and Tenant*, § 295 at 340–42 (2d ed. 1908). It carried the right to a jury trial. *See May v. Calder*, 2 Mass. at 55; *Pernell v. Southall Realty*, 416 U.S. 363, 374, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198, 208 (1974).

Writs of entry of many variations also existed at common law in Massachusetts. According to an ancient Massachusetts treatise, one in particular, *Entry ad terminum qui praeteriit*, could "be brought *after the expiration of the lease* by the lessor ...,*" and it lay "against the *lessee ...*

---

**2.** Although the Superior Court found the FED statute unconstitutional in its failure to provide a jury trial, the Attorney General has not defended the statute's constitutionality but has only entered an appearance as amicus curiae to advise this Court on appropriate ways to analyze the issue of when a constitutional right to jury trial exists.

**3.** It may be that the "controversies concerning property" is the controlling clause. At the Constitutional Convention a motion was made to strike the phrase as redundant. But the motion was defeated on Holmes's statement:

> I consider the portions of the section as distinct: there are civil suits, and controversies concerning property. These are cases which are not merely civil, nor merely criminal. I therefore move to insert after "suits" "in all."

The section passed as amended. J. Perley, *Debates and Journal of the Constitutional Convention* 121 (1820). The recognition that property disputes did not fit neatly within the civil or criminal categories is consistent with the uncertain nature of pre–1820 FED actions (civil, criminal or quasicriminal) as discussed later in text.

**4.** Previously, our case law seemed to treat the presumption as running in the other direction: there was no right to a jury trial *unless* it was affirmatively shown that in 1820 a jury trial was available in such a case. *See Director v. Fort Halifax Packing Co.*, 510 A.2d 1054, 1063 (Me. 1986); *State v. Anton*, 463 A.2d 703, 708–9 (Me. 1983). *See generally* Note, *City of Portland v. DePaolo: Defining the Role of Stare Decisis in State Constitutional Decisionmaking*, 41 Me.L. Rev. 201 (1989).

for *years* . . . if such tenant . . . *hold over,* after the expiration of his term." "[W]here the lease is *for years only,* the lessor . . . may maintain that action against him, who holds over after the expiration of the term, even *without first making an entry."* A. Stearns, *A Summary of the Law and Practice of Real Actions* 182–83 (1824) (emphasis original), citing *Barber v. Root,* 10 Mass. 260 (1813). Writs of entry actions were tried to a jury. *See* Stearns at 243–44; *Pernell v. Southall Realty* 416 U.S. at 373, 94 S.Ct. at 1728, 40 L.Ed.2d at 207.

At common law, forcible entry and detainer was also available to evict a tenant. It was a "criminal, or quasicriminal process" and "was only allowed where the entry and detainer were with force—the strong hand." *Eveleth v. Gill,* 97 Me. 315, 317, 54 A. 756, 757 (1903). Relief could include both punishment and restitution. *See Pernell v. Southall Realty,* 416 U.S. at 376, 94 S.Ct. at 1730, 40 L.Ed.2d at 209. A jury trial was available. *Id.* at 379, 94 S.Ct. at 1731, 40 L.Ed.2d at 211.[5]

In 1784, Massachusetts enacted a statute permitting a justice of the peace to issue a writ of restitution of the premises against those who "having a lawful and peaceable entry into lands or tenements, unlawfully and by force hold the same." 1784 Mass. Acts ch. 8. That statute provided only civil relief, and an action under the statute was initiated by a private litigant, although in the name of the Commonwealth. *See, e.g., Commonwealth v. Dudley,* 10 Mass. 403 (1813).[6] The statute, known as a Forcible Entry and Detainer statute, specifically provided for a jury trial.

In short, all the pre–1820 judicial procedures in this general area of eviction carried the right to a jury trial. *See Pernell v. Southall Realty,* 416 U.S. at 375–76, 94 S.Ct. at 1730, 40 L.Ed.2d at 209.

The Massachusetts statutory FED remedy, like the common law remedy, was available only in cases where a tenant held over by force.[7] When Maine separated from Massachusetts in 1820 it reenacted the Massachusetts FED statute almost immediately, but with an important addition: Maine's FED remedy could also be used against any tenant who "shall unlawfully refuse to quit any house, land, or tenement" after his tenancy terminated and appropriate notice had been given. P.L. 1821, ch. 79, § 4.[8] In other words, as of 1821 Maine's FED statute could be used to evict tenants who refused to leave even if

---

5. The Supreme Court in *Pernell* noted that historically the common law forcible entry and detainer action was less similar to modern, statutory civil forcible entry and detainer actions than some of the other actions discussed in text, 416 U.S. at 376–379, 94 S.Ct. at 1730–31, 40 L.Ed.2d at 209–211, primarily because the common law action was "essentially a criminal provision." *Id.* at 378, 94 S.Ct. at 1731, 40 L.Ed.2d at 210. However, the Court determined that even if it were confined to the statute of Henry VI (the early precursor of the Massachusetts FED statute of 1784) as the closest common law analogue to modern civil FED statutes, it would still find authority therein for a present day right to a jury trial under the Seventh Amendment. *Id.* at 379, 94 S.Ct. at 1731, 40 L.Ed.2d at 211.

6. *Harding's Case,* 1 Me. 22 (1820), observed that the criminal process (requiring, for example, that the action be commenced by indictment) was not made part of the statutory scheme. Instead, "[o]ur statute [the 1784 Massachusetts statute, since the first Maine FED statute was not adopted until 1821] simply provides a process to obtain restitution, leaving the parties, the one to his action for damages, the other to his liability to be indicted and punished at common law." *Id.* at 27.

7. One of the purposes in adopting the statutory scheme was to avoid breaches of the peace. *Harding's Case,* 1 Me. at 25–26 (1820). In 1813, a Massachusetts litigant attempted to extend the statute's coverage to evict a tenant who peaceably declined to leave. *Commonwealth v. Dudley,* 10 Mass. at 409. The Massachusetts Supreme Judicial Court refused to permit this and ruled:

> There must be some apparent violence offered, in deed or in word, to the person of another; or the party must be furnished with unusual offensive weapons, or attended by an unusual multitude of people: all which circumstances would tend to excite terror in the owner, and prevent him from claiming or maintaining his rights. But if a man, being in a house, refuse to open the door to one who comes to make an entry, this is no forcible detainer.

*Id.* (footnotes omitted).

8. In 1826 Massachusetts altered its FED statute in the same fashion. 1826 Mass. Acts ch. 89.

there was no force, just as in this case. The practice in Maine was to bring the action in the name of the civil litigant, not the State. *See, e.g., Morton v. Thompson,* 13 Me. 162 (1836); *Clapp v. Paine,* 18 Me. 264 (1841). Like the Massachusetts statute on which it was based, this Maine statute also contained the right to a jury trial. P.L. 1821, ch. 79, § 2. Maine's current FED statute, under which this lawsuit was commenced, is simply the most recent successor to the 1821 statute.

Since the Massachusetts FED statute did not include a remedy where force was not involved, the landlord here maintains that Maine created a new remedy in 1821 that does not bring with it a right to a jury trial. Given the common law and statutory background we have described, however, we are satisfied that Maine's 1821 modification of the Massachusetts FED statute did not create a novel cause of action for evicting tenants. Instead, it was a logical resolution of the preexisting Massachusetts statutory and common law. We conclude that suits under Maine's modern FED statute to evict tenants who hold over peaceably are "of the same general nature" as the causes of action that carried the right to a jury trial in 1820. Thus, a jury trial is required under article I, section 20 because in the eviction of tenants prior to 1820 it had not "heretofore been otherwise practiced...."

That should be the end of the matter except for recent practice coupled with a confusing historical artifact. It is common knowledge that jury trials have not been available in FED proceedings in the District Courts since their creation in 1961. Moreover, in 1824, soon after the Maine Constitution's adoption, the Maine Legislature eliminated jury trials in FED proceedings before a justice of the peace. The tenant has conceded that, since then, Maine has consistently failed to provide a jury trial in FED proceedings brought by landlords against tenants. If there really has been a uniform understanding commencing within four years of the Constitution's adoption and continuing for 165 years that there was no right to a jury trial in FED actions, we would be hard pressed in 1989 to overlook that contemporary and till now unchallenged view. A closer examination of the history, however, persuades us that the tenant's concession is ill-advised.

### Practice Since 1820

In 1824, when jury trials were eliminated in FED cases before the justice of the peace, a party aggrieved could take an *appeal* from the final judgment of the justice of the peace to the Court of Common Pleas.[9] An appeal to Common Pleas meant a trial de novo with a jury.[10] Thus, a jury trial was still available in an FED action, but at the next level of the court system.[11]

---

**9.** There was no such appeal under the 1821 FED statute providing for jury trial before the justice of the peace. P.L. 1821 ch. 79 § 3.

**10.** As Justice Silsby has noted, the court system in Maine was basically the same as it had been in Massachusetts until 1852:

This three tier system was composed of Justices of the Peace who had jurisdiction of small criminal and civil cases, the so-called Common Pleas Court, a jury trial court, and the Supreme Judicial Court, both a jury trial court and a court of law. *There was an appeal from a Justice of the Peace to the Common Pleas Court and another appeal to the Supreme Judicial Court. In other words, either party in most cases could demand and get two jury trials.*

Silsby, *History of the Maine Superior Court, Part I,* 14 Me.B.Bull. 109, 132 (1980) (emphasis supplied) (footnote omitted).

**11.** We have consistently recognized the right of appeal to a jury trial court as preserving consti-

tutional rights to a jury trial. In the first volume of the Maine Reports, speaking of criminal prosecution, the Court said:

In order to give effect to [article I, section 6 providing a jury trial in all criminal prosecutions], the accused must, of necessity, be entitled to an appeal from the sentence of a justice of the peace, who tries without the intervention of a jury, to the circuit court of common pleas, where a trial by jury may be had.

*Johnson's Case,* 1 Me. 230 (1821). Later criminal cases to the same effect are summarized in Petruccelli & McKay, *The Right to Jury Trial Under the Maine Constitution,* 1 Me.B.J. 240 (1986). We made the same point in the civil context in 1987:

Permitting a defendant to exercise his constitutional right to a jury trial in a civil case by providing for a jury trial de novo on appeal is not a dramatic departure but is firmly grounded in a clear historical antecedent.

*City of Portland v. DePaolo,* 531 A.2d at 671 n. 5 (citing 1783 Mass. Acts ch. 42). *See also Ela v.*

A legal handbook of 1835, designed to assist justices, lawyers and others in understanding the work of the courts, supports this interpretation of the early statutes. It states that on appeals to the Court of Common Pleas, "both parties shall be allowed to offer any evidence upon the trial at the Court of Common Pleas, in the same manner as if the cause had been originally commenced there." J. Perley, *The Maine Justice* 90 (3rd ed. 1835).

The Revised Statutes of 1841 continued to recognize the nature of an appeal as being a trial de novo. They specifically provided that upon an appeal from the justice of the peace to the District Court (which had replaced Common Pleas), "the case shall be entered, tried and determined in the district court, in like manner as if it had been commenced there." R.S. ch. 116, § 9 (1841). The Law Court interpreted this to mean:

> After a final decision is had of the cause before the justice, the appeal will remove the whole case to the District Court, and the same questions may there be raised, as had been before him, and according to the statute, the case may be tried in the same manner as if it had been commenced in that court.

*Waterville v. Howard,* 30 Me. 103, 104 (1849). It is apparent that trial de novo meant a jury trial. As late as 1852 it was an "important innovation" to propose that a judge could be required to decide a case in place of the jury even when the parties agreed. *Report of the Commissioners, appointed by virtue of "a resolve in favor of re-organizing the Judicial Courts,"* House Doc. No. 33 at 8–9, 31st Legis. (1852).

The continuing availability of a jury trial in FED actions through the automatic right of appeal is reflected in an 1853 addition to the statutes dealing specifically with the termination of tenancies at will. The statute directs that in an FED action on appeal, "the court before which such an appeal may be tried shall direct the jury, if they find for the defendant, to estimate the damages sustained by the defendant and return their verdict therefor." P.L. 1853, ch. 39, § 2.

After the District Courts were abolished in 1852, P.L. 1852, ch. 246, § 1, the same FED structure continued except that appeal was taken to the Supreme Judicial Court sitting at nisi prius. R.S. ch. 94, § 8 (1857). When the Superior Courts were added as intermediate courts, first in Cumberland County in 1868, P.L. 1868, ch. 151, and then in Kennebec County in 1878, P.L. 1878, ch. 10, they were given jurisdiction of appeals from Municipal Courts and trial justices (who in 1860 had taken the role of justices of the peace) so far as FED actions were concerned. The statute establishing the Cumberland County Superior Court made clear that jury trials were available on appeal. Specifically, "appeals shall be entered by the appellant as in the Supreme Judicial Court, and a jury fee paid by him at the time of entry, and appeals shall be in order for trial at the first term." P.L. 1868, ch. 151, § 6.[12] Under Rule IV, "Order of Jury Trials," the 1868 Cumberland County Superior Court Rules listed "New entries of appeals from Municipal Courts and Trial Justices" as second in priority for jury trials. J. Spaulding, *Practice in Civil Actions* 599 (1886). Kennebec County did the same in 1878. *Id.* at 614.

The FED statute of 1871 continued to recognize the availability of a jury trial on appeal. Appeals then were taken from trial justices, Municipal Courts and Police Courts to the Supreme Judicial Court sitting at nisi prius.[13] R.S. ch. 94 §§ 3, 8

*Pelletier,* 495 A.2d at 1228 (Article I, section 20 guarantees the right to a jury trial in a small claims proceeding because, although small claims were tried before a justice of the peace sitting without a jury prior to 1820, they were appealable to the Court of Common Pleas to be heard de novo and, on request of the appellant, by a jury).

**12.** In the absence of a jury demand, all cases were to be tried without the intervention of a jury "except appeals." *Id.*

**13.** Referring to the use of trial justices and Municipal Courts, Chief Justice L.A. Emery observed in 1916: "It should be noted that in all cases civil and criminal in these local courts an appeal without regard to amount lay to some superior court where a jury trial could be had."

(1871). Section 9 of that FED statute provided that if the claimant were awarded judgment by a trial justice or the Municipal or Police Court, he could obtain a writ of possession if he provided a bond against the possibility of a contrary verdict on appeal. Then, on the appeal, "if the jury find for the defendant, they shall find the damages sustained by him." *Id.* The Revised Statutes of 1883 continued this arrangement, except that appeals were then available to the Superior Court in Cumberland and Kennebec Counties from trial justices, Municipal or Police Courts. R.S. ch. 94, § 8 (1883).

Once again, the legal handbooks confirm this understanding of the statute. Spaulding notes the peculiar practice in New England of "an appellate court retrying a cause by jury." Spaulding at 377. In listing the requisites to an appeal, Spaulding states "[t]here must be an issue in technical form, or, at least, the pleadings must be in such a form as to present a question of fact, to be tried by a jury, or a question of law to be decided by the court, as upon demurrer." *Id.* at 384 (footnotes omitted). Under his heading "Proceedings in the Appellate Court" he notes that "[a]ll such actions are in general tried on the appeal, without any reference to the proceedings in the court below." *Id.* at 389. Spaulding specifically recognizes the availability of an appeal from the judgment of trial justices in an FED action. *Id.* at 377 n. (r).[14]

No change in this structure occurred under the Revised Statutes of 1903, 1916, 1930, 1944 and 1954 although the names and roles of the various courts continued to change.[15] As late as 1954, the Revised Statutes provided that on appeal "the clerk shall enter the appeal in the appellate court where it shall be determined as a new entry." R.S. ch. 111, § 4 (1954).

The disappearance of this longstanding right to a jury trial in FED actions appears to have occurred by oversight with the creation of the modern District Court in 1961. P.L. 1961, ch. 386. In establishing

Emery, *Changes in the Judicial System of Maine,* 9 Me.L.R. 89, 91 (1916).

**14.** There is discrete evidence that jury trials were in fact occurring on appeal under the early statutes. *See, e.g., Clapp v. Paine,* 18 Me. 264 (1841), referring to an action under the 1824 FED statute that had been commenced before a justice of the peace, appealed to the District Court, with exceptions taken to the Law Court. The Court stated: "We do not find in the testimony evidence, which would justify the jury in finding an actual forcible detainer, prior to the complaint; and the instructions, requested of the presiding Judge, that the testimony would warrant such a finding, were properly withheld." *Id.* at 269. Likewise, in *Wheeler v. Wood,* 25 Me. 287, 288 (1845), an FED action on appeal in the District Court was "taken from the jury" when the parties agreed to a statement of facts. Review of the record before the District Court for the Middle District, held at Augusta, Doc. 122, vol. 9 at 201–203 (Dec. 3, 1844) (contained in the State Archives), reveals that the case was "opened to the jury," but after the evidence was submitted, it was "withdrawn from the jury and submitted to the judge on an agreed statement of facts." *Accord, Wheeler v. Cowan,* 25 Me. 283 (1845) (*semble*).

*Small v. Clark,* 97 Me. 304, 54 A. 758 (1903), is a later case that clearly shows the availability of jury trial on appeal. This was an FED action brought initially before a trial justice in Waldo County. The defendant appealed to the Supreme Judicial Court sitting at nisi prius and testimony was taken before a jury. Before the case was submitted to the jury, however, the parties by agreement reported it to the Law Court. *Id.* at 305, 54 A. at 758. (Spaulding reports in 1886 that "[a] common practice in the Supreme Judicial Court and in the superior courts is for the case to be withdrawn from the jury and submitted on the report of the presiding justice to the law court...." Spaulding at 405.)

**15.** *Sweeney v. Dahl,* 140 Me. 133, 34 A.2d 673 (1943), is a later example. This FED case originated in the South Portland Municipal Court and was appealed to the Superior Court. The Law Court's opinion reflects that it was because the parties were able to agree to the facts that this case was presented to "the presiding Justice, sitting without a jury." *Id.* at 134, 34 A.2d at 674. In 1954, on appeal from a Municipal Court FED decision, the appellant was still entitled to a full trial in Superior Court. Thus, in *Profenno v. Community Oil Co., Inc.,* 150 Me. 210, 107 A.2d 772 (1954), the plaintiff obtained judgment on an FED action in the Portland Municipal Court. The defendant appealed and the case was tried fully in the Cumberland County Superior Court. The opinion makes a point of noting that in this particular case no jury was empaneled, though there was a "full and complete hearing and trial." *Id.* at 211, 107 A.2d at 773. No explanation for not using a jury is offered. *Id.* at 211, 216–17, 107 A.2d at 773, 775.

the District Court in place of the trial justices and Municipal Courts, and "[p]ending promulgation of new rules" of procedure by the Supreme Judicial Court, the Legislature provided that "[a]ppeals from the District Court shall be heard de novo in the Superior Court." *Id.* § 7. That was no change. Then the Supreme Judicial Court appointed a District Court Rules Committee to devise the rules for the new court. The Committee did so "with certain general policies in mind," one of which

> required considerable modification of the present practice on appeals to the Superior Court from a municipal court. This policy was that factual decisions of the District Court, on the civil side, should be final unless clearly erroneous. Such finality seems in keeping with the dignity and standing of the newly created system.

Southard, *Introductory Comment on Maine District Court Rules* in Field & McKusick, *Maine Civil Practice* at 173–74 (1st. ed. Supp.1967), 158 Me. 539, 540 (1962). The Committee drafted Rule 73(a) governing appeals from the District Court to provide:

> the appeal shall be on questions of law only and shall be determined by the Superior Court without jury on the record on appeal specified in Rule 75. Any findings of fact of the District Court shall not be set aside unless clearly erroneous.

Field & McKusick at 198, 158 Me. at 571. To protect jury trial rights generally under this scheme, early removal to the Superior Court (where a jury trial was available) "was preserved and made easy," *id.* at 540—but not in FED actions. Removal there was expressly prohibited, Me.D. Civ.R. 80D(i), in order, according to the Advisory Committee, "to permit prompt execution." *Id.* at 579. Jury trial for FED actions was apparently forgotten.

This was a dramatic change. No limitation on the scope of appeal had been contained in the previous Municipal Court Civil Rules. Instead, Municipal Court Rule 26, the FED rule, had provided that "either party may appeal as in other civil actions...." It was recognized in the report-er's note as incorporating "existing statutory law with reference to appeal and recognizance in forcible entry and detainer cases,"—*i.e.,* appeal for trial de novo. M.Mun.Civ.R. 26(f) and reporter's note, Field & McKusick at 690 (1st. ed.1959). As late as 1970 the academic commentary on the District Court Civil Rules recognized that the statutes of Maine still contemplated a jury trial on an FED appeal from the District Court to the Superior Court. Field, McKusick & Wroth, *Maine Civil Practice* at 509–10 n. 16 (2d ed.1970). The authors referred to 14 M.R.S.A. § 6009 which, until 1979, provided that on appeal in an FED action "if on trial the jury find for the defendant they shall find the damages sustained by him." The commentators described this as "a finding by a jury on appeal from a District Court judgment in an action of forcible entry and detainer." They suggested that it was "merely a leftover from the days when District Court judgments were reviewable de novo in the Superior Court" and considered it superseded by the District Court Civil Rule. *Id.* Soon the Law Court was treating Superior Court FED decisions as merely those of an intermediate appellate tribunal. *See, e.g., Rubin v. Josephson,* 478 A.2d 665, 667 n. 2 (Me.1984) (Law Court review of an FED action is "confined to the District Court decision. When the Superior Court acts as an intermediate appellate tribunal, we review the initial determination of the adjudicatory body and not the decision of the Superior Court.").

Although a properly promulgated rule could have superseded the statutory provision for jury trial on appeal, and although the statute was amended in 1979 to eliminate the reference to jury trial on appeal, P.L. 1979, ch. 172 § 2, neither the rule nor the amended statute could alter the constitutional requirement. Indeed, there is no suggestion in any Advisory Committee notes that the rules ever consciously dealt with the right to jury trial in FED actions. Instead, their purpose was simply to avoid the duplicative trials of the previous system and to give greater authority and respectability to the judgments of the Dis-

trict Court, successor to the Municipal Courts and trial justices.

### Relief To Be Afforded

Our historical inquiry satisfies us that, contrary to the tenant's concession, a jury trial was consistently available until the 1960's to any FED litigant who chose to appeal the original tribunal's decision. The loss of this right was through oversight. Since the historical practice is consistent with our view of the constitutional requirement, we conclude that the Superior Court was correct in finding a constitutional right to a jury trial. The remaining question is how this right is to be provided. The Superior Court held that the District Court erred in denying the tenant's request to "transfer" the matter at the outset to Superior Court for a jury trial. We conclude, however, that, except in title cases, the appropriate procedure is to provide a de novo jury trial only on appeal after judgment is first entered in the District Court.

M.R.Civ.P. 80D(i) currently provides that "there shall be no removal of Forcible Entry and Detainer actions, except as provided by statute." The statute, 14 M.R.S.A. § 6006, contemplates removal only when the tenant claims title or claims that his right to possession derives from the title of someone other than the person who is suing. We see no reason to interfere with this statutory scheme. This special treatment of title questions goes all the way back to the 1824 FED statute. P.L. 1824, ch. 268, § 3. Consistently under every version of the FED statute since 1824, only when a title issue was raised was the case subject to removal from the nonjury court (whether it be justice of the peace, trial justice or Municipal Court). *See e.g.,* R.S. ch. 128 § 4 (1841); R.S. ch. 96, § 6 (1903); R.S. ch. 122, § 6 (1954). If the tenant had other defenses, he or she had to pursue them before the nonjury court. Only then could an appeal de novo be taken to a jury

court. In *Abbott v. Norton,* 53 Me. 158 (1865), for example, a landlord had commenced an FED action before the Municipal Court of Bath. When the tenant raised a title issue, the case was removed to the Supreme Judicial Court sitting at nisi prius for a jury trial. At that point the tenant attempted to ignore his title issue and to focus instead on the merits of the complaint. On report of the matter, the Court held:

> The questions here presented were properly cognizable by the Municipal Court on the general issue, whose jurisdiction over such subjects is exclusive and whose error in judgment can be corrected only on an *appeal* to this Court. Any other construction of the [FED] statute would virtually oust the Municipal Judges of their jurisdiction, and transfer all such processes to this Court upon the filing of *fictitious* brief statements putting in issue the title to real estate; upon which issue the parties were only entitled to a trial by jury. Of all other matters the inferior court has exclusive jurisdiction, from whose judgment an *appeal* lies to this Court.

*Id.* at 159 (citations omitted) (underlining supplied, italics original). *Abbott v. Norton* clearly recognized that the parties must first have their nonjury trial on all issues other than title before either party could exercise its right of appeal to a jury trial court.[16]

Although we find a constitutional right to a jury trial, we wish to interfere as little as possible with the Legislature's assignment of jurisdiction to the District Court and its objective of making FED actions simple and speedy. We believe this can best be accomplished by adhering to the old statutory scheme contemplating a trial to judgment in the nonjury court first unless a title issue is raised. (We took a similar approach when we found a right to jury trial in small claims proceedings. *See Ela v. Pelletier,* 495 A.2d at 1229.) In most

---

**16.** On careful reading, we conclude that *Abbott v. Norton* did not hold that a jury trial is available only in a title case. Rather, *Abbott v. Norton* held that an *initial* jury trial is available only in such cases. Beyond that, the Court established that the Municipal Court must first

hear the case; then an appeal was available to the Supreme Judicial Court sitting at nisi prius. 53 Me. at 159. As we have demonstrated, the entire action could be heard by a jury on such an appeal.

FED actions, no more will be required; no appeal to the Superior Court for a jury trial will be necessary. Therefore, we hold that, except in cases where title is raised, the parties must proceed to judgment in the District Court before there is a right to appeal to the Superior Court for a trial de novo with a jury.[17] If the defendant appeals, the Superior Court Justice "may stay the issuance of a writ of possession pending disposition of the appeal." 14 M.R.S.A. § 6008.

Since we have concluded that article I, section 20 of the Maine Constitution requires that a jury trial be available in an FED action, the provisions of M.R.Civ.P. 80D(f) and 14 M.R.S.A. § 6008 are invalid to the extent they provide that an appeal in an FED action is "as in other civil actions." M.R.Civ.P. 76D's language—that an appeal

> shall be on questions of law only and shall be determined by the Superior Court without jury on the record on appeal specified in Rule 76f. Any findings of fact of the District Court shall not be set aside unless clearly erroneous—

is inapplicable to appeals of FED actions from the District Court.

We expect that it will be necessary for the Supreme Judicial Court, upon the advice of its Advisory Committee on Civil Rules, to promulgate a new rule comparable to that now used in appeals of small claims actions where there is a right to jury trial de novo in the Superior Court. *See* M.R.Civ.P. 80L. In the meantime, the Superior Court may use that rule by analogy in determining such matters as whether there is any issue of fact for a jury's determination.

The entry is:

Ruling reported is affirmed in part and vacated in part; remanded for further proceedings.

All concurring.

---

**17.** Where title is legitimately raised and the case properly removed to the Superior Court, that court has "clean-up" jurisdiction to adjudicate all the issues. *See Bicknell Mfg. Co. v. Bennett,* 417 A.2d 414, 420 (Me.1980). *Bicknell* overruled earlier precedents that removal of the title issue waived all other defenses. *E.g., Reed v. Reed,* 113 Me. 522, 95 A. 211, 212 (1915).